WHALEY v. STEVENS.

1. The complaint in this case, liberally construed, sufficiently alleged a right of way appendant and appurtenant to plaintiff's land, and its obstruction by the defendant.

2. Where plaintiff claims by prescription a right of way appurtenant, testimony of long user of a road lying wholly on defendant's land is competent, even though insufficient of itself to establish the right claimed.

3. In charging that "if the jury find that the plaintiff has for twenty years continuously used the way over defendant's land, their verdict must be for the plaintiff," the trial judge erred in failing to distinguish between a right of way in gross and appurtenant, and in omitting to instruct them that a right of way appurtenant must have one terminus on the land to which it is appurtenant.

4. A right of way in gross is an individual right, non-transferrible, and dying with the claimant. A right of way appendant and appurtenant attaches to the estate from which it starts, and as an indispensable element of its existence it must be essentially necessary to the enjoyment of the land to which it is claimed to belong.

5. The judge should leave to the jury the force and effect of the facts of the case.

6. A private way may not be obtained by prescription across a public highway as against the owner of the soil.

Before HUDSON, J., Charleston, February, 1887.

This was an action by Thomas Whaley against William S. Stevens, commenced in Berkeley County, and by consent transferred for trial to Charleston County. See 24 *S. C.*, 479, and also 21 *Ibid.*, 221. The opinion states the nature of the action. The charge of the Circuit Judge (omitting his charge upon requests not excepted to) was as follows:

The plaintiff asks me to charge the following propositions:

*First.* "That such a right of way as that described and claimed by plaintiff in his complaint is a right of way appurtenant to the Caneslatch plantation." That is correct; the description in the complaint fulfils the description of a right of way appendant and appurtenant.   *   *   *

*Ninth.* "That if the jury find that the plaintiff's father and plaintiff after him, have for twenty years continuously and ad-

versely used the way over the defendant's land, described and claimed in the complaint, their verdict must be for the plaintiff." I charge you that that is correct.   *   *   *

The counsel for the defence asks me to charge you as follows :

*First.* "Because plaintiff, in claiming a right of way by prescription over the defendant's Seven Oaks plantation, as appurtenant to the Caneslatch plantation, as owned by his father before his purchase of three hundred acres from defendant in 1853, has laid his way in his complaint as one entire way from the plaintiff's dwelling house on said Caneslatch plantation to the Stono River, part of which is alleged to be by means of a road beginning on Caneslatch plantation and through the land of the said plantation, and over the piece of land known as the three hundred acres, originally belonging to the adjoining Seven Oaks plantation, but afterwards purchased by the said William S. Whaley, the father of the plaintiff, from the defendant, William S. Stevens, and now the property of the said plaintiff, out to the public road leading to John's Island Ferry, and in so laying his way, and in offering proof of user of a way so laid, plaintiff has shown, as to so much of the way claimed, a way lying wholly on his own land, for which plaintiff cannot prescribe." I cannot charge you that proposition. In so far as it recites matters of fact, it is left for you. I can tell you that a party cannot prescribe for a road over his own land, but in other respects that proposition is not correct.

*Second.* "Because plaintiff, in claiming a right of way by prescription over defendant's Seven Oaks plantation as appurtenant to Caneslatch plantation, as it was owned by his father before his purchase of Seven Oaks, has laid his way in his complaint as one entire way from the plaintiff's dwelling house on Caneslatch plantation to Stono River, part of which is alleged to be by means of a road beginning on Caneslatch plantation, and through the land of the said plantation, and over the three hundred acre tract purchased by his father from Stevens, out to and across the public road leading to John's Island Ferry, and in so laying his way and in offering proof of user of a way so laid, plaintiff has shown, as to so much of the way claimed, a way upon and through a public highway, for which plaintiff cannot prescribe." If it is

intended by this proposition to say that the public highway sev-
ers and destroys the private way at that point, I cannot charge
you that; and the proposition here, in so far as it involves a
question of law, I cannot charge you as correct.

*Third.* "That either of the parts of the way, so far laid in the
complaint, and claimed in proof, being beyond the power of plain-
tiff to acquire by prescription, the entirety and continuity of the
way as laid in the complaint is broken, and the proof of user of
the remaining part, viz., that over defendant's land and creek,
does not and cannot support the complaint or prevail as evidence
of prescription of the entire way as claimed." I cannot charge
you that proposition, in so far as it contains a proposition of law,
and, of course, the facts are all for you.

*Fourth.* "That the connection between that part of the whole
way as claimed, which lies on defendant's land and that begin-
ning on the Caneslatch plantation, being thus broken, the proof
of user becomes reduced to user of a way lying between the pub-
lic road and creek leading to the Stono River, a way wholly with-
in the defendant's land, and cannot be established by such proof
of user as any more than a right of way in gross, and cannot be
sustained as a way appurtenant to the Caneslatch plantation."
I cannot charge you that proposition. * * *

*Sixth.* "That an indispensable element of a way appurtenant
or appendant to a plantation or tract of land, is that it must be
essentially necessary' to its enjoyment, and that when plaintiff,
proved that his Caneslatch plantation on John's Island has a
frontage on a public road leading to a public ferry, he proved,
in his access to such public road, and by means thereof for
all purposes, to market or elsewhere, which the occasions of
said plantation might require, that plaintiff had the means of
full and reasonable enjoyment of his said plantation, and that
no other road can in law be regarded as 'essentially neces-
sary,' and therefore appurtenant thereto." What has been
proved by the evidence in this case is a question of fact for you,
and whether that public road leads entirely to a ferry on Stono
River is a question for you. And I furthermore instruct you
that a private right of way appurtenant to a plantation, if claimed
on the ground of necessity, must be alleged and fully proved, but

that the claim in the present case is not upon the ground of necessity. * * *

*Ninth.* "That the previous owner being Gouverneur M. Wilkins, the life-tenant, and Ellen Screven, a *feme covert*, no adverse user could be maintained against them, or either of them, or be the means of acquiring title by prescription over Seven Oaks plantation." I charge you, gentlemen, that if there be a life-tenant in occupation of a plantation, and that life-tenant should suffer one for twenty years continuously under a claim of right to open and use a road, the life-tenant, as against him, would lose the exclusive right—that is, the adverse right would be acquired against the life-tenant, but that would not affect the remainder-man. You may acquire an easement as against the life-tenant, but the moment the remainderman falls in there would be the beginning of a new possession, against which the adverse claimant would have to acquire an independent right. So that this proposition is correct.

*Tenth.* "That even if Wm. S. Whaley could have acquired title by prescription to a way by means of a road over the Seven Oaks plantation against Gouverneur M. Wilkins, the life-tenant, or Ellen Screven, the wife of John Screven, a *feme covert*, such prescription became extinguished as to the three hundred acres by the purchase of the same in 1853 by Wm. S. Whaley, the claimant." That is, in one sense of the word, correct, but would not affect this case. As to the three hundred acres which he bought and acquired fee to, he would no longer be claiming over that three hundred acre tract by prescription, but that would not destroy the road over it, if the party continued to use it. It would not itself break the continuity of the road, or suspend the right to anything beyond it.

*Eleventh.* "That such extinguishment of that part of the way claimed by prescription, which traversed the three hundred acre tract, extinguished the whole way so previously owned, as alleged." That, gentlemen, is not the correct view of the matter, and I cannot charge you that proposition.

*Twelfth.* "That the identity of the road previously acquired, as is alleged, as a road from the dwelling house on Caneslatch plantation over the three hundred acre tract to the creek on Seven

Oaks plantation, was destroyed by such extinguishment, and could, after 1853, no longer be claimed or proved as such way by prescription in said Wm. S. Whaley." That is not a correct proprosition, and I therefore decline to charge it.

*Thirteenth.* "That the appurtenancy of the way over defendant's land, that is. between the public road and the creek to the Caneslatch plantation, was wholly destroyed by such extinguishment." I decline to charge that.   *   *   *

*Fifteenth.* "That no proof has been offered showing that a way over defendant's Seven Oaks plantation and creek is necessary, or essentially necessary, to the use and enjoyment of the plaintiff's Caneslatch plaintation, and, in that particular, appurtenant thereto." That is correct. It has not been proved, or attempted to be proved, that that way is essential to the enjoyment of the Caneslatch plantation, but evidence has been introduced tending to show that it is appurtenant thereto.  · I have deemed it best to pass separately upon these propositions, and I will now proceed as briefly as I can to give you what I conceive to be the law of this case.

A right of way over the property of a private individual may be acquired under our law by grant, or it may be acquired by prescription, or it may arise from necessity, and briefly I will expound to you the three methods : By grant is where it is in actual writing, and if granted as appurtenant to a particular piece of land, covers a way which begins on that land and terminates elsewhere. Then it is a right of way appendant and appurtenant, acquired by grant, and the grant is binding. Suppose Dr. Stevens had owned Caneslatch as well as Seven Oaks, and had sold Caneslatch to Mr. Whaley, in which deed he sold him, amongst the appurtenances, a special right of way out of his plantation and across the Seven Oaks to that particular landing. Then that would be a right of way appendant and appurtenant by grant.

A right of way from necessity may be illustrated as arising in a case of this kind : Suppose Dr. Stevens had sold to some one one hundred acres of land in Seven Oaks, with no road leading either to a water highway or public road, having, in short, no outlet. The man buying that land would acquire a right of way

out, and he could have a private way established across the balance of Dr. Stevens' land across to the public road. That is a case where it would arise from necessity, and if any dispute should arise as to that private way, then the question of its being essential would be a material question.

Now, one can acquire a private right of way by prescription, and by that we mean the use continuously of that particular road for the period of twenty years or more, adversely to the claim of the man over whose lands it runs. And if that use continues unbroken for a period of twenty years, the man acquires just the same right as if it had originated in an actual grant in writing. Although it might be a trespass in the origin, and might continue as a trespass, yet at the expiration of the twenty years it becomes a right. Now, what do we mean by adverse use? We mean either the construction of a road originally, the opening of it as and for the road of the party opening it, and the continuous, open, notorious adverse use of that road for a period of twenty years. That is what we mean by adverse. There need not be twenty years of wrangling and dispute between the parties. The whole proceeding might be friendly between the parties, but the use of that road must be as and for the property—the road of the property, and he must use it and claim it as his own.

The claim need not be by actual word of mouth, but by such conduct as amounts to an advertisement to the party owning the land that the right to come and go over it is claimed as a right. Any one who permits that use cannot, after twenty years, recall it. He cannot defeat the right—the easement. It does not involve a fee in the soil, but it establishes a right of way for persons or vehicles, and for the passage over it of whatever is necessary to transact the business of the plantation.

What we mean by a road appendant and appurtenant to a plantation, is that one of its ends or termini must begin on that plantation. It must proceed out of that plantation and then have a terminus elsewhere, and it must be continuous and unbroken. It must be a continuous road with one of the termini on the plantation of which it is appurtenant. It must be for the use of that plantation, and must be used for the benefit of that plantation. It is not necessary, as I tell you, that it should be essen-

tial to the use of the plantation. There might be an outlet else-where; yet, nevertheless, if the road begins on the place and crosses the land of another, as in this case, to a landing, and it is used for the purposes of that plantation, then it is a road which pertains to, is appurtenant to, the plantation, and after the lapse of twenty years, if acquired by adverse user in that time, has the same validity as if granted in writing. As I said to you before, if it is claimed on the ground of necessity, it is not neces-sary that there should be twenty years' use. If it is claimed under express grant, it is not necessary that it should be used for twenty years; but where it is to be acquired by prescription, it must be by twenty years adverse, continuous, unbroken use.

You have had that diagram explained to you. The question I now ask is, is that road, beginning at A, testified to as the house of Mr. Whaley, running across the Caneslatch plantation and across the public road and on through the Seven Oaks to that landing; is it appurtenant to that plantation? The testi-mony is that it begins at the residence on Caneslatch, and that it follows the track laid down on that diagram. Now, you will observe that it is crossed by the public road, and that it also runs across, not only Caneslatch, but also across the three hundred acres bought from Dr. Stevens. It is contended that this public road cannot be crossed by a private path. But I charge you that the public road does not sever the continuity of the private path necessarily. I charge you that a private path or way can cross a public way, as a public road can cross another. And, further-more, I charge you that the three hundred acre tract that was bought by Mr. Whaley and was added to Caneslatch, and through which the road runs, does not break the continuity of the road. Whilst the plaintiff cannot prescribe for a road over his own land, yet the road must begin on his own land and run over part of it in order to be appurtenant. It must touch it and go into it. He does not hold this road to the public road by pre-scription, because he has the fee in the land, but the question is, is it the beginning of the road which goes to the landing?

I charge you that a private road can cross a public road which already exists, and have continuity on both sides of the public road, just as well as a private way already having continuity

would not have its continuity broken by having a public road established across it. Suppose there had been no public road established when this private road was laid out, and that subsequently the public road was established across this private way already established? That would not break the continuity of the private way. So it is for you to determine from the evidence in this particular case what were the original ends or termini of that road. Does the private path start at Whaley's house and cross the public road, through the Seven Oaks, to the landing? If it was established that way, then it has continuity across the public road and down to the landing.

Now, is it appurtenant to the place? Not merely that it has one terminus on the place, but was it established for the benefit of the plantation, was it used for the plantation, and did it become a part and parcel of it and appendant to it? If so, and if the plaintiff has established that this was done adversely against the defendant for a period of twenty years, openly and notoriously, then the plaintiff has established his right to that easement. Now, suppose that Mr. Whaley had acquired title by twenty years adverse user against Ward, that would continue; but if there is no evidence of the length of time, just throw that out. I do not care how long Mr. Whaley used it as against Screven, so that brings us to 1853, when Stevens became the owner of Seven Oaks.

Now, if this adverse use was kept up for twenty years from Whaley's house through his plantation, across the public road, across Seven Oaks to the landing, and it was called the Caneslatch landing road, and was used by Mr. Whaley in his life-time, and afterwards by his son, as and for their road, as their property—their right continuously against the rights of the owner of Seven Oaks, then Whaley has a title to the right of way. And if Mr. Stevens simply stood by and permitted it, if he remained friendly, but saw them using it, as and for their property, ditching and working it, and exercising acts of ownership over it, then Stevens is estopped the right to shut it up. But if before the twenty years ran out Stevens shut it up, and the shutting up was acquiesced in by Whaley, or if it was used by the Whaleys by permission of Stevens, then that would change the question. It is for

you to say whether they were using it by permission, or as their own right; and whether it is as appurtenant and appendant to that plantation or not. It is for you to say whether it is a continuous road or not. You are to look at it as a mere matter of law as coming from me, and as a mere matter of fact as coming from the witnesses, and you must not be influenced by any ulterior reasons whatever.

If there is any injury here which you can estimate in dollars and cents, you have a right to give damages for such injury. If you find for the plaintiff, you cannot give punitive damages, if the obstruction was done in a peaceful manner. You could not punish Stevens for shutting up, if he did so quietly, under a claim of right. But if he did not do so quietly, and not under a claim of right, then you can find against him damages to punish for the vindictiveness.

The jury found for plaintiff the right of way.

From the judgment entered on this verdict, the defendant appealed upon exceptions too numerous and lengthy to be inserted here, but alleging error to the Circuit Judge in his charges upon the requests above stated, and in other portions of his charge.

*Mr. T. G. Barker*, for appellant.

*Messrs. Inglesby & Miller*, contra.

December 12, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The plaintiff, respondent, brought the action below to recover damages for obstruction to a right of way alleged to be appendant and appurtenant to plaintiff's "Caneslatch" plantation. The defendant demurred orally on the ground that the complaint did not state facts sufficient to constitute a cause of action. This demurrer was overruled by his honor, Judge Hudson presiding, and the case proceeded to a verdict for the plaintiff. The exceptions allege error to the judge, first, because the demurrer was not sustained, and then to the admission of certain testimony; to his refusal to charge certain requests, and to his charge in several particulars.

First. Did his honor err in overruling the demurrer ? A complaint is obnoxious to a demurrer of the kind interposed here, when the plaintiff will fail in his action unless he proves other facts than those alleged in the complaint ; in other words, when assuming the facts alleged to be true, yet upon said facts alone he cannot recover, as matter of law. Testing the complaint by this rule, we think the demurrer was properly overruled. It is true, the complaint is not as definite in the allegations of the particular facts upon which the right of way claimed rests, as it might have been. A right of way founded upon prescription, and claimed to be appendant and appurtenant to a certain close or plantation, must have one of its termini upon the plantation to which it is claimed to be attached. It must have been in the adverse use of the claimant and those under whom he claims for at least twenty years, and in some kinds of ways at least, appendant and appurtenant, it must be essential to the enjoyment of said close or plantation ; and perhaps there may be some other requisites.

These facts do not appear in terms in the allegations of the complaint, but we think they are covered by the general allegation "that the said William S. Whaley, during his life-time, and the plaintiff since his death, had a right of way by prescription on foot and with horses, * * * by means of a road beginning on the said Caneslatch plantation, and appendant and appurtenant thereto, * * * out to and across the public road leading to John's Island Ferry, through, over, and upon the adjoining lands of the said defendant, known as the Seven Oaks plantation." It seems to us that this general allegation by a liberal intendment included the necessary probative facts above, and entitled the plaintiff to offer testimony thereto, and which, upon the demurrer, was properly assumed to be admitted.

Next, as to the admission of certain testimony. The point made by the appellant is, "That his honor erred in permitting testimony under the complaint to be given of user of a road which lay wholly on defendant's land, and to allow such testimony to go to the jury as proof of user of the way claimed in the complaint." The folio at which this alleged testimony was allowed is not pointed out, nor have we been able to find from an examination

of the "Case" where any objection was interposed by appellant, raising the question here made. When the plaintiff was upon the stand as a witness the appellant objected several times, but no where as to testimony of the character mentioned, nor have we been able to find that any such objection was interposed to the testimony of either of the other witnesses introduced by the plaintiff, at the time of their examination. But, supposing that we may have overlooked the objection, we may say that the objection is untenable. The question involved was the adverse use of the road by the plaintiff and his father, how long, &c. The road on the defendant's land was the road prescribed for, and testimony as to its adverse use, it appears to us, was competent at least, its value being dependent upon the fact, whether said road could be connected with the "Caneslatch Plantation" in such long adverse use as to make it appendant and appurtenant thereto.

Next, that his honor erred in charging, "That if the jury find that the plaintiff's father and plaintiff after him, have for twenty years continuously used the way over defendant's land, described and claimed in the complaint, their verdict must be for the plaintiff." There are two kinds of ways, to wit: ways appendant and appurtenant, and ways in gross. The first is attached to and belongs to land, inheres in it and goes with it, and is entitled to be enjoyed by whomsoever becomes possessed thereof, in whole or in part; the second is a personal right, and is not transferrible. Twenty years adverse use is a necessary condition to the obtaining of both of these ways by prescription. But in reference to a way appendant and appurtenant, something more is necessary, to wit: such a way must have one terminus upon the close to which it is claimed to be appurtenant, it must inhere in said close, and it must be essentially necessary to its enjoyment, while with a way in gross these conditions are not necessary. That kind of way rests entirely upon the adverse use. Now, in view of these principles, we think the charge of his honor here was erroneous, as it based the right of recovery by the plaintiff simply upon his adverse use and that of his father, not explaining the difference between the two kinds of ways and letting the jury understand that in this action, claiming, as it did, a way

appurtenant and appendant to the Caneslatch plantation, it was necessary to prove nothing more than twenty years adverse use by his father and himself, of the road described. The charge applied to a way in gross as much as to a way appurtenant, and we think was on that account misleading.

Next, error is alleged, because his honor declined to charge upon request, that an indispensable element of a way appurtenant and appendant is that it must be "essentially necessary" to the enjoyment of the plantation to which it is claimed to belong. His honor not only declined this request, but charged to the reverse, saying that it was not necessary that the "way should be essential to the use of the plantation," thus eliminating that feature from the case, and from the consideration of the jury. The important difference between a way appurtenant and one in gross, as has already been stated, is, that a way in gross is an individual right, non-transferrible, and dying with the claimant. A way appurtenant, however, makes the estate to which it is attached a dominant estate and the one over which it runs a servient one, and this relation lasts as long as the estates last, and it inheres, not only in the dominant estate as a whole, but to every portion and subdivision thereof. It is a complete servitude which runs with the land. It would seem in principle, therefore, that before such an important right should be acquired by one close over another, that there should be some necessity therefor, it should not be a mere matter of convenience. And such seems to be the law.

This court said in the former appeal, through Mr. Justice McIver, delivering the opinion: "That a way to be appurtenant, it must adhere in the land and be *essentially necessary to its enjoyment*" (*Whaley* v. *Stevens*, 21 *S. C.*, 223), and further that the complaint therein was defective as a complaint for a way appurtenant—"that it did not allege that it was necessary for the enjoyment of the land known as Caneslatch." Mr. Washburne says: "Ways are said to be appendant or appurtenant, when they are incident to an estate, one terminus being on the land of the party claiming. They must inhere in the land, concern the premises, and be *essentially necessary to their enjoyment.*" *Washb. Eas.*, ch. 11, § 5, page 217.

We think the refusal of the judge to charge as requested on this subject, was in conflict with these authorities, as well as his charge thereon.

We do not think that his honor erred in declining to charge as requested, "That either of the parts of the way so laid in the complaint and claimed in proof being beyond the power of plaintiff to acquire by prescription, the entirety and continuity of the way as laid in the complaint is broken, and the proof of user of the remaining part, *viz.*, that over defendant's land and creek, does not and cannot support the complaint, or prevail as evidence of prescription of the entire way as claimed." This request involved the force and effects of ₑfacts, of which it was the province of the jury to consider and not the judge.

The appellant further excepts, that his honor charged that a private way might cross a public road as well as a public road might cross another. Supposing that his honor meant that a private way might be obtained by prescription across a public highway, as against the owner of the soil, we think this was error. *Wash. Ease.*, 138, 164; *Wait Act. & Def.*, 695; *State* v. *Jefcoat*, 11 *Rich.*, 529; *Hamilton* v. *White*, 5 *N. Y.*, 9. Besides, the principles upon which a private right of way may be prescribed for would seem to exclude this. Prescription is founded upon adverse use for a period of at least twenty years, adverse to some one who has the right to object, and who did not object. Upon such use the law presumes a grant from the former owner arising from his long acquiescence. To give this prescription a safe foundation, however, of course the former owner must know of the adverse use and must have been in condition to have opposed it, with the right to do so. Now, in the case of a public highway, every citizen has the right to be upon it, and to use it as he may desire, to go up and down, or across it. And we do not see how using a public highway can be adverse to the rights of the owner of the soil upon which it runs. Every one has the right to be there because it is a public highway, and the owner of the soil, even if he knows that one is there, has no right to object, and his acquiescence cannot be properly construed into an acknowledgment that the party is there by virtue of some

36

private claim, to which he is presumed to have assented and which may ripen into the presumption of a grant.

It is the judgment of this court, that the judgment below be reversed on account of the errors herein above.